**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

| | | |
|---|---|---|
| Catskill Mountainkeeper, Inc., *et al.*, Petitioners, v. Federal Energy Regulatory Commission, Respondent. | ) | No. 26-1387 |
| New York State Department of Environmental Conservation, Petitioner, v. Federal Energy Regulatory Commission, Respondent. | ) | No. 26-1422 |
| Stop the Pipeline, Petitioner, v. Federal Energy Regulatory Commission, Respondent. | ) | No. 26-1437 |

# REPLY OF RESPONDENT FEDERAL ENERGY REGULATORY COMMISSION IN SUPPORT OF MOTION TO DISMISS PETITIONS

Petitioners expend 73 pages, across three separate filings, in an effort to sustain immediate judicial review of interlocutory, non-final, procedural orders of the Federal Energy Regulatory Commission. As explained in the Commission's June 15, 2026 Motion to Dismiss,[1] the orders on review did nothing more than confirm that the proceedings subject to this Court's prior review were dismissed. That action did not injure Petitioners; indeed, Petitioners specifically requested it.

---

[1] *See* FERC Motion to Dismiss, No. 26-1387, Dkt Entry No. 16; No. 26-1422, Dkt Entry No. 13; No. 26-1437, Dkt Entry No. 16. As set forth in more detail in FERC's Motion to Dismiss, Petitioners challenge *Const. Pipeline Co.*, Order On Remand, 194 FERC ¶ 61,064 (Jan. 23, 2026) (Remand Order); Notice Of Denial Of Rehearing By Operation Of Law And Providing For Further Consideration, 194 FERC ¶ 62,146 (Mar. 26, 2026); and Order Dismissing Requests For Rehearing, 195 FERC ¶ 61,116 (May 19, 2026). The Commission's Remand Order responded to this Court's November 2021 Vacatur Order addressing previous petitions for review. *See* Order, No. 16-345, Doc. No. 479; No. 19-4338, Doc. No. 161 (Nov. 18, 2021) (addressing two separate proceedings before this Court, *Catskill Mountainkeeper, Inc. v. FERC*, Nos. 16-345, *et al.*; and *N.Y. State Dep't of Env't Conservation v. FERC*, Nos. 19-4338, *et al.*). The Commission's current filing replies to oppositions filed by Catskill Petitioners (Dkt Entry No. 28), New York Department (Dkt Entry No. 23), and Stop the Pipeline (Dkt Entry No. 25) in their respective cases on July 27, 2026.

Petitioners' real objection is to the Commission's docketing and ongoing consideration of Constitution Pipeline Company's December 2025 filing. But Petitioners are not statutorily aggrieved by, and lack Article III standing to challenge, such interlocutory procedural steps. Moreover, the ministerial case-processing actions that Petitioners object to are non-final and thus unreviewable under black-letter Supreme Court and Second Circuit precedent.

Petitioners waste their efforts on ungrounded complaints about the agency's compliance with an earlier order of this Court, while ignoring the fundamental fact that the orders now on review make no merits rulings: later agency orders that do so can themselves be the basis for later petitions for review. In the absence of such merits-based action, Petitioners fail to demonstrate that they have established the (1) aggrievement, (2) injury, and (3) finality that are the statutory and constitutional prerequisites to judicial review of Commission orders.

## I. Petitioners' alleged aggrievement bears no relation to the Commission's compliance with the Court's Vacatur Order.

The Commission's Remand Order simply "confirm[ed]" that the proceedings subject to this Court's review in Nos. 16-345 and 19-4338 "are dismissed." Remand Order P 11; *see also* Vacatur Order at 2

(ordering that the "underlying agency orders" be vacated and that the cases be remanded "with instructions to dismiss the agency proceedings").

Petitioners now seek review of matters unrelated to the Commission's compliance with the Court's Vacatur Order. *See, e.g.*, Catskill Opp. at 23 ("As is shown above, FERC's Remand Order does not give Petitioners the relief they requested from FERC because FERC did not dismiss the [December 2025 and February 2026] Petitions and require [Constitution and Iroquois] to file new applications."); Stop the Pipeline Opp. at 2 (asserting that the Commission "went beyond" the Vacatur Order's instruction to just "dismiss the agency proceedings").

But the only remaining thing that the Commission did was to notice, docket, and continue to process Constitution's December 2025 filing, submitted years after the Court issued its Vacatur Order. *See* Remand Order P 13; Dismissal Order PP 18-19. Nothing in the Remand Order relied on the earlier orders challenged in Nos. 16-345 and 19-4338. *See* Dismissal Order P 19 (explaining that the Vacatur Order deprived the orders previously challenged of legal force and prevented them from serving as precedent in other proceedings).

Petitioners assume that legal consequences could "spawn" from the now-vacated orders. *E.g.*, Catskill Opp. at 11. This misunderstands the agency's limited action. *See* Dismissal Order P 19 ("The Remand Order does not rely on the vacated orders as precedent, nor does it anywhere suggest that the vacated orders somehow continue to have legal effect."). The Court's Vacatur Order did not alter the status of documents in the record, aside from the vacated agency orders, nor did it order anything that prevents the Commission from considering the existing record. *See* Dismissal Order P 19 n.43. The Commission regularly considers the existing record when issuing orders on remand after a Commission order has been vacated and remanded. *See, e.g., Dominion Cove Point LNG, LP,* 125 FERC ¶ 61,018 (2008).

## II. Petitioners, rather than demonstrating injury that is both concrete and imminent, offer only conjecture based on a hypothetical future final Commission order that may never issue.

As set forth in the Commission's Motion, the Remand Order does not require Petitioners to do anything. Nor does it require them to refrain from doing anything. Accordingly, they lack Article III standing. *See* Motion at 11 (citing *Trump v. New York*, 592 U.S. 125, 134 (2020)).

Petitioners gesture at Article III injury by referring to participation in non-final ongoing agency proceedings (that will be subject to review as provided in the Natural Gas Act (15 U.S.C. § 717r)) and to the possibility that the agency might someday issue a final order that will injure them. But a party "cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action." *Conn. Fair Hous. Ctr. v. CoreLogic Rental Prop. Sols., LLC*, 167 F.4th 605, 619 (2d Cir. 2026); *see also Food & Drug Admin. v. All. for Hippocratic Med.,* 602 U.S. 367, 380 (2024) (explaining that standing doctrine "means that the federal courts decide some contested legal questions later rather than sooner, thereby allowing issues to percolate and potentially be resolved by the political branches in the democratic process"); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013) ("In other words, respondents cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending.").

## III. Petitioners provide no basis to treat the Remand Order as final agency action subject to review.

Petitioners insist that the Remand Order is final agency action, but nothing in their submissions supports that claim. Nor do

Petitioners offer any persuasive answer to the straightforward point that, if the Commission eventually issues a final order that actually aggrieves them, the Natural Gas Act (15 U.S.C. § 717r) would permit them to seek judicial review at that time. *See* Motion at 19 (noting incongruence of Petitioners' support for judicial abeyance while agency proceedings run their normal course).

Petitioners contend that the Commission did not terminate the underlying proceedings. *See, e.g.,* Catskill Opp. at 4-8. But their claim that the Commission did not comply with the Court's Vacatur Order simply previews arguments they may pursue, if ever necessary, in a later challenge to a future final order—arguments aimed at alleged deficiencies in the application or supposed reliance on stale data. *See, e.g.,* Catskill Opp. at 6. None of this identifies any present, reviewable legal consequence stemming from the Remand Order. For example, with respect to the argument that the Commission has relied on stale data, reviewing courts readily examine under the applicable standard of review whether the Commission acted on outdated information. *See, e.g., Appalachian Voices v. FERC*, 139 F.4th 903, 906 (D.C. Cir. 2025) (finding that Commission "reasonably concluded that the information

presented by petitioners did not amount to significant changes in circumstances that merited renewed economic or environmental analysis").

Petitioners' aggrievement and injury theories rest entirely on the Commission's non-final docketing, noticing, and ongoing processing of Constitution's December 2025 filing—steps that understandably generate Petitioners' interest but create no legal consequences and merely begin a proceeding that may (or may not) result in a final order capable of aggrieving them. Petitioners might prefer that the Commission dismiss Constitution's filing rather than continue to process it, thus sparing them the time and trouble of their (purely voluntary) participation in such ongoing proceedings. But it is a "well-established rule 'that the mere trouble and expense of defending an administrative proceeding is insufficient to warrant judicial review of the agency's action prior to the conclusion of the administrative proceeding.'" *Abbey v. Sullivan*, 978 F.2d 37, 46 (2d Cir. 1992) (quoting *Central Hudson Gas & Elec. Corp. v. EPA*, 587 F.2d 549, 559 (2d Cir. 1978)).

The New York Department contends that the Natural Gas Act contains no finality requirement. New York Department Opp. at 20-22. Incorrect. Supreme Court and Second Circuit precedent make clear that the Natural Gas Act—like its parallel provision in the Federal Power Act—permits judicial review only of final Commission orders. *See Fed. Power Comm'n v. Metro. Edison Co.*, 304 U.S. 375, 383-84 (1938); *Niagara Mohawk Power Corp. v. FPC*, 538 F.2d 966, 969, 971 (2d Cir. 1976) (applying *Metropolitan Edison* and finding that agency orders denying requests to dismiss a pending investigation were "unreviewable, interlocutory orders" and that review of such orders "must be dismissed").

The New York Department and Stop the Pipeline Petitioners ignore this controlling precedent, and Catskill Petitioners advance an unpersuasive interpretation of *Niagara Mohawk* that invents an exception to the finality requirement for cases that are held in abeyance. *See* 538 F.2d at 969; Catskill Opp. at 16. Tellingly, Petitioners identify no instance in which any court of appeals has exercised jurisdiction over the Commission's ministerial acts of docketing, noticing, or continuing to process a 15 U.S.C. § 717f

certificate filing. *See* Dismissal Order P 18 (summarizing Petitioners' asserted errors and alleged injury).

And the New York Department is simply wrong in arguing (Opp. at 22) that finality principles are flexible and merely "prudential." Although the "inquiry" is a "pragmatic one," "finality is necessary to [the court's] jurisdiction." *Pub. Utilities Comm'n of State of Cal. v. FERC*, 894 F.2d 1372, 1376-77 (D.C. Cir. 1990).

As Catskill Petitioners concede (Opp. at 14 n.1), "procedural and ministerial decisions" do not rise to the level of substantive decisions that warrant further agency rehearing and judicial review under the Natural Gas Act. Here, a "ministerial" decision is exactly what Petitioners asked for. *See, e.g.,* Remand Order P 11 (describing New York Department's request that the Commission take a "ministerial" step on remand to document through a formal order that the earlier proceedings were dismissed). As the Commission explained, its docketing, noticing, and ongoing processing of Constitution's December 2025 filing fall "well within the Commission's discretion to manage its docket." Dismissal Order P 12.

Petitioners simultaneously argue that their petitions are not premature, yet also contend that, if there is any doubt, the cases should be held in abeyance. *See* New York Department Opp. at 13-16; Stop the Pipeline Opp. at 20 (explaining that abeyance could "save time and resources"); Catskill Opp. at 8 (reminding the Court—with a nod to "economy"—of request for abeyance until Commission issues a final decision). But these positions cannot be reconciled with their alleged claims of aggrievement and injury from ongoing agency proceedings.

* * *

Petitioners have identified no aggrievement, no injury, and no final merits issue capable of judicial resolution at this early juncture; the Commission's interlocutory, procedural-only Remand Order thus falls outside this Court's jurisdiction. The petitions should therefore be dismissed. If, however, the Court declines to dismiss, the Commission agrees that the cases, to the extent they remain alive, should be consolidated and held in abeyance—including deferral of filing the certified index to the record—while agency proceedings continue in the normal course of decision-making.

Respectfully submitted,

Robert H. Solomon
Solicitor

*/s/ Scott Ray Ediger*
Scott Ray Ediger
Attorney

Federal Energy Regulatory
Commission
Washington, DC 20426
(202) 502-8334
scott.ediger@ferc.gov

*Counsel for Respondent*
*Federal Energy Regulatory*
*Commission*

August 17, 2026

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I certify that the foregoing complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) because it contains 1,920 words.

I further certify that this motion complies with the type-face requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this motion has been prepared in Century Schoolbook 14-point font using Microsoft Word.

*/s/ Scott Ray Ediger*
Scott Ray Ediger
Attorney

Federal Energy Regulatory
Commission
Washington, DC 20426
(202) 502-8334
scott.ediger@ferc.gov

*Counsel for Respondent*
*Federal Energy Regulatory*
*Commission*

August 17, 2026

## CERTIFICATE OF SERVICE

I hereby certify that, on August 17, 2026, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Scott Ray Ediger*
Scott Ray Ediger
Attorney

Federal Energy Regulatory Commission
Washington, DC 20426
(202) 502-8334
scott.ediger@ferc.gov

*Counsel for Respondent Federal Energy Regulatory Commission*

August 17, 2026